UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION - BAY CITY

IN RE:

    TONY DENHA                                      Case No. 09-20284-dob
    and KHALIDA DENHA,                     Chapter 7 Proceeding
          Debtors.                                   Hon. Daniel S. Opperman
_____/

RANDALL L. FRANK,

        Plaintiff,

v.                                                             Adversary Proceeding
                                                           Case No. 09-2142-dob

TONY DENHA and KHALIDA DENHA,

        Defendants.
_____/

## Opinion

The Plaintiff, Randall Frank, seeks to deny the discharge of the Defendants, Tony and Khalida Denha, because they failed to disclose and tried to conceal a lease, a life insurance policy, and a promissory note. The Plaintiff also claims the Defendants made false oaths regarding their assets and financial affairs. The Defendants deny these allegations and request a discharge. The parties stipulated to certain facts prior to the September 28, 2012, trial. At the trial, Defendant Mr. Denha, Robert Denha, and Raouf Salib testified. So that the record is clear, the Court makes the following findings of fact based on the stipulation of the parties and then continues with additional facts established at the trial from the testimony of witnesses and the admitted exhibits.

### Stipulated Findings of Facts

    A.    On March 18, 2008, Supervalu Holdings, Incorporated obtained a judgment in Oakland County District Court against the Debtors; as of the date of their bankruptcy filing that judgment stood at $733,386.67 ("Supervalu Judgment").

    B.    On September 8, 2008, Debtors' sons, Anthony and Robert Denha, filed suit against Supervalu Holdings, Incorporated in U.S. District Court for the Eastern District of Michigan (Bay City) ("Federal Suit").

C. In response to a subpoena dated January 11, 2012, New York Like Insurance Company provided all documentation in its possession regarding activity on the New York Like Policy from January 31, 2002, to March 4, 2010; and Debtors' communications with New York Life and its agents.

D. The documents provided in response to the subpoena referenced above show no account activity or communications from Debtors between September 4, 2008, and June 4, 2009.

E. Debtors filed bankruptcy January 31, 2009.

F. Debtors' original Schedules A-J were filed February 17, 2009, and contained a "DECLARATION CONCERNING DEBTOR'S [sic] SCHEDULES", signed by the Debtors, reading "I declare under penalty of perjury that I have read the answers contained in the foregoing summary and schedules, consisting of 19 sheets, and that they are true and correct to the best of my knowledge, information, and belief."

G. Debtors' original Schedule G does not disclose the Food Value Lease.

H. Debtors' original Schedule I discloses Debtor husband's receipt of $1,000.00 per month of "Income from real property".

I. Debtors' original Schedule B describes the Debtors' interest in insurance policies as "New York Life Insurance policy in the face amount of $500,000; lien against policy for loan of $130,000; no cash surrender value in excess of loan balance" and lists the current value of that interest at $0.00.

J. Debtors attended the initially scheduled 341 Meeting of Creditors on March 10, 2009, which was continued so the Debtors could provide requested documentation to the Trustee.

K. At the First Meeting of Creditors, the Trustee directed the Debtors to begin forwarding payments received on the Food Value Lease to the Trustee.

. . .

M. On March 30, 2009, the Debtors' sons reached a settlement in the Federal Suit wherein the Supervalu Judgment would be released.

N. The Debtors did not attend the continued Meeting of Creditors on March 31, 2009, which was continued to April 24, 2009.

. . .

P. The Debtors did not attend the continued Meeting of Creditors on April 24, 2009.

Q. A Meeting of Creditors was held on June 30, 2009.

R. As of July 10, 2009, the Debtors had not turned over any payments received on the Food Value Lease.

. . .

BB. Beginning September 14, 2009, Food Value, Incorporated began paying payments, to which Debtors are entitled under the Food Value Lease, directly to the Trustee via his legal counsel.

<u>Findings of Fact from Trial Testimony and Admitted Exhibits</u>

The Defendant, Tony Denha, entered the United States in 1966 and became a citizen in 1971. He has worked his entire life in the grocery business, usually managing grocery stores. Mr. Denha was generally successful in his business and his sons decided to continue this business and expand into other parts of Michigan. Unfortunately, their efforts were not as successful and the Defendants, Tony and Khalida Denha, and their children, along with other family members, found themselves named as the defendants in various lawsuits. Most notable, Supervalu initiated a lawsuit seeking over $1,000,000. As the Defendants were defending this lawsuit, their sons initiated a separate lawsuit against Supervalu. The Defendants were unable to pay the attorney fees to defend the lawsuit against them and their attorney ultimately withdrew. This left the Defendants without an attorney for sometime, which, in turn, resulted in a judgment against the Defendants. Sensing that they needed to take some action to avoid collection activity against them, the Defendants met with Richard Nahabedian for advice, including the wisdom of filing a bankruptcy petition. After consulting with Mr. Nahabedian, the Defendants decided that bankruptcy was the only method available to them to stop collection activities, so they filed a Chapter 7 petition with this Court.

As part of this process, Mr. Nahabedian asked the Defendants to get information to him so that their Schedules and Statement of Financial Affairs could be completed. To that end, the Defendant Mr. Denha, and his son, Robert Denha, started accumulating the necessary information. As part of this process, they consulted with Raouf Salib, an insurance agent who worked with the Defendants since 1986. According to the Defendant Mr. Denha, and Robert Denha, they asked Mr.

Salib about the status of various life insurance policies and were informed that there was no money available from these policies. Mr. Salib's testimony, however, is not as clear as it appears, because New York Life sent a letter on August 20, 2009, indicating that at least $64,943.50 was available.

Shortly after the Defendants' Chapter 7 bankruptcy was filed, their sons began negotiations to resolve all of the family differences with Supervalu. As a result of these efforts, Supervalu settled all of its differences with the Defendants, thus removing the major catalyst for the Defendants' Chapter 7 petition.

Mr. Denha informed Mr. Nahabedian of this resolution and of his desire to not continue the Chapter 7 case. Mr. Denha testified that he was told to not attend the adjourned first meeting of creditors and that the case would be dismissed. Mr. Denha and Khalida Denha did not attend the first meeting of creditors. The Plaintiff sought information and documents from the Defendants and the Defendants did not disclose this information. This necessitated the Plaintiff to resort to the time honored methods of getting this information either directly from the Defendants or from other sources. Being frustrated with the slowness of the Defendants' response, the Plaintiff also filed the instant adversary proceeding. It was not until a Default and Default Judgment were entered in this adversary proceeding and the Defendants hired new counsel that they began to cooperate fully and completely with the Plaintiff. As a result of this cooperation, the Plaintiff has collected significant sums for the bankruptcy estate.

Prior to the trial in this case, the Court heard direct testimony from Mr. Denha relating to the setting aside of the Default and Default Judgment in this case. Mr. Denha's tesetimony was similar to his trial testimony, and the Court notes that Mr. Denha, while a successful grocer, still has difficulty with the English language, especially the written word, and is generally unacquainted with many of the nuances of the United States legal system.

## Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157, 28 U.S.C. § 1334, and E.D. Mich. LR 83.50. The issues before the Court in this case strictly involve issues arising from Title 11 of the United States Code and, therefore, are issues within this Court's jurisdiction pursuant to *Stern v. Marshall,* 131 S. Ct. 2594 (2011), and *Waldman v. Stone*, 698 F.3d 910 (6th Cir. 2012). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) (determinations as to discharegeability of particular debts).

## Applicable Statutes

Sub-sections (2) and (4) of 11 U.S.C. § 727(a) require some sort of scienter; section (3) does not. The Court's analysis will focus upon these sub-sections of 11 U.S.C. § 727(a).

11 U.S.C. 727(a)(2) states:

> (a) The court shall grant the debtor a discharge, unless –
>
> > (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed –
> >
> > > (A) property of the debtor, within one year before the date of the filing of the petition; or
> > >
> > > (B) property of the estate, after the date of the filing of the petition.

Section 727(a) of the Bankruptcy Code provides that a debtor is entitled to a discharge unless an exception applies. Although exceptions to discharge are strictly construed against a creditor, *see Rembert v. AT&T Universal Card Servs., Inc.* (*In re Rembert*), 141 F.3d 277, 281 (6th Cir. 1998), "a discharge in bankruptcy is a privilege, not a right, and should only inure to the benefit of the honest debtor." *Wazeter v. Michigan National Bank (In re Wazeter)*, 209 B.R. 222, 226 (W.D. Mich. 1997). Pursuant to Federal Rule of Bankruptcy Procedure 4005, the burden of proof in objecting to a discharge under Section 727 is on the plaintiff and must be established by a preponderance of the evidence. *Barclays/American Bus. Credit, Inc., v. Adams (In re Adams)*, 31 F.3d 389, 394 (6th Cir.

1994).

In order to deny a debtor his discharge, Section 727(a)(2) requires that four elements be proven: (1) transfer of property; (2) belonging to the debtor; (3) within one year of filing the bankruptcy petition; and (4) with actual intent to hinder, delay, or defraud creditors or an officer of the estate. *See, e.g., In re Halperin*, 215 B.R. 321 (Bankr. E.D. N.Y. 1997).

Because a debtor rarely admits to acting "with actual intent to hinder, delay, or defraud creditors or an officer of the estate", courts have considered the following factors as indicators of fraudulent intent:

(1) the transfer was to an insider;

(2) the debtor retained possession or control of the property transferred after the transfer;

(3) the transfer was disclosed or concealed;

(4) before the transfer was made, the debtor had been sued or threatened with suit;

(5) the transfer was of substantially all of the debtor's assets;

(6) the debtor absconded;

(7) the debtor removed or concealed assets;

(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred;

(9) the debtor was insolvent or became insolvent shortly after the transfer was made;

(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

*Taunt v. Wojtala (In re Wojtala)*, 113 B.R. 332, 336 (Bankr. E.D. Mich. 1990) (citing *In re Peters*, 106 B.R. 1 (Bankr. D. Mass. 1989); *Matter of Brooks*, 58 B.R. 462 (Bankr. W.D. Pa. 1986)).

Courts also look to a number of factors to determine if a debtor's transfer was intended to hinder or delay creditors, including:

(1) whether the transaction is conducted at arms-length; (2) whether the debtor is

> aware of the existence of a significant judgment or over-due debt; (3) whether a creditor is in hot pursuit of its judgment/claim and whether debtor knows this; and (4) the timing of the transfer relative to the filing of the petition. Thus while a court may, after viewing all of the relevant factors, determine that the debtor did not intend to defraud any creditor it may still reach the conclusion that the debtor did intend to hinder or delay a creditor.

*Wojtala*, 113 B.R. at 336-37.

Section 727(a)(3) of the Code provides that the court shall grant a debtor a discharge unless,

> The debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

Section 727(a)(3) was drafted to ensure that a condition precedent to discharge is that the debtor must provide to his creditors enough information to ascertain the debtor's financial condition and to track his finances with substantial accuracy for a reasonable period in the past to the present. *Wazeter*, 209 B.R. at 227 (citing *In re Juzwiak*, 89 F.3d 424, 427 (7th Cir. 1996)). Creditors and courts are not required to speculate regarding the financial condition and history of the debtor or to reconstruct the debtor's financial affairs. *Wazeter,* 209 B.R. at 227. Intent is not an element of a Section 727(a)(3) exception to discharge. *Id.*

> A debtor is not required to keep books or records in any particular form, nor do the creditors have to establish an intent to conceal the financial condition, as long as complete disclosure is made so that the creditors are not required to guess at what actually occurred.

*United States Fid. & Guar. v. Delancey (In re Delancey)*, 58 B.R. 762, 768 (Bankr. S.D. N.Y. 1986).

The party seeking the denial of a discharge has the burden of proving the inadequacy of the debtor's records. To determine whether the debtor's records are adequate, courts examine whether the records are the type kept by a reasonably prudent debtor with the same occupation, financial structure, education, and experience. *Wazeter*, 209 B.R. at 227. "Where debtors are sophisticated in business, and carry on a business involving significant assets, creditors have an expectation of greater and better record keeping." *Union Planters Bank, N.A. v. Connors*, 283 F.3d 896, 900 (7th Cir. 2002) (citation omitted).

Once the moving party shows that there is not sufficient written evidence to ascertain the debtor's financial condition and history, then the burden shifts to the debtor to show that his failure to keep adequate records was justified in the circumstances. *Wazeter*, 209 B.R. at 227. To determine whether the inadequacy of the debtor's records was justifiable, courts look at a variety of factors, including the debtor's education, sophistication, business experience, size, and complexity of the debtor's business, debtor's personal financial structure, and any special circumstances. *Wazeter*, 209 B.R. at 230. *See also Dolin v. Northern Petrochemical Co. (In re Dolin)*, 799 F.2d 251 (6th Cir. 1986) (debtor's drug and gambling addictions did not justify his difficulty in recording his business transactions).

Courts will deny a discharge under section 727(a)(3) when there is evidence of debtor misbehavior. For example, in *In re Delancey*, 58 B.R. 762 (Bankr. S.D. N.Y. 1986), the debtor failed to produce records showing what he did with the proceeds from the sale of jewelry valued at over $269,000 and art valued at over $200,000. Debtor's failure to produce such records was not excused by his testimony that he simply did not maintain such records. *Id.* at 768. "The production of records to explain the disposition of substantial assets is a prerequisite to a debtor's relief from having to repay his creditors." *Id.* at 769.

Section 727(a)(4)(A) bars a debtor's discharge if he knowingly and fraudulently makes a false oath or account in connection with the case. "The false oath that is a sufficient ground for denying a discharge may consist of (1) a false statement or omission in the debtor's schedules or (2) a false statement by the debtor at an examination during the course of the proceedings." 6 COLLIER ON BANKRUPTCY ¶ 727.04[1][c] at 727-42 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2010). In order to prevail under § 727(a)(4)(A), a creditor must establish five elements: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew that the statement was false; (4) the debtor made the statement with the intent to deceive; and (5) the statement related materially to the bankruptcy case. *In re Zwirn*, 2005 WL 1978510 (Bankr. S.D.

Fla 2005)(citations omitted).[1]

The purpose of § 727(a)(4) (A) is to "ensure 'that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs.'" *In re Bratcher,* 289 B.R. 205, 218 (Bankr. M.D. Fla. 2003)(*quoting Boroff v. Tully (In re Tully),* 818 F.2d 106, 110 (1st Cir. 1987)). Section 727(a)(4)(A) ensures that adequate information is available to the case trustee and creditors without the need for examination or investigation to determine whether the information is true. *In re Craig,* 252 B.R. 822, 828-29 (Bankr. S.D. Fla. 2000). Debtors have a "paramount duty to consider all questions posed on a statement or schedule carefully and see that the question is answered completely in all respects." *Craig,* 252 B.R. at 829 (internal quotation omitted). "Policy considerations mandate that the requirement to list all assets and liabilities is an absolute obligation of those seeking discharge of their debts." *Whitehead,* 278 B.R. 589, 594 (Bankr. M.D. Fla. 2002). "[A] debtor who fails to make a full and complete disclosure of relevant information places the right to the discharge in serious jeopardy." *Id.*

> The requisite intent. . . may be discovered by inference from the facts. 'A reckless disregard of both the serious nature of the information sought and the necessary attention to detail and accuracy in answering may rise to the level of fraudulent intent necessary to bar a discharge.' However a false statement resulting from ignorance or carelessness is not one that is knowing and fraudulent.

6 COLLIER ON BANKRUPTCY ¶ 727.04[1][a] at 727-40-41.

Section 727(a)(4)(D) of the Bankruptcy Code provides that the court shall grant a debtor a discharge unless,

> the debtor knowingly and fraudulently, in or in connection with the case - - withheld information from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs.

Under Section 727(a)(4)(D), the party objecting to discharge must show that: "(1) the withholding of documents was done by the debtor or someone for whose conduct the debtor is legally

---

[1] While "a discharge may only be barred under § 727(a)(2) if the debtor's intent was to defraud a creditor or an officer of the estate, section 727(a)(4) does not so limit the objects of the debtor's fraudulent intent". 6 COLLIER ON BANKRUPTCY ¶ 727.04[1][a] at 727-40.

responsible; (2) was in connection with the case; (3) was withheld from an officer of the estate entitled to possession; (4) was done knowingly and fraudulently; and (5) relates to the debtor's property or financial affairs." *In re Slocombe*, 344 B.R. 529, 534 (Bankr. W.D. Mich. 2006).

Once the initial burden is met, "the Debtor must bring forth enough credible evidence to dissuade the court from exercising its discretion to deny debtor's discharge based upon the evidence presented by the objecting party." *Id.*, *citing* Fed. R. Bankr. P. 4005, and *Grant v. Sadler (In re Sadler)*, 282 B.R. 254 (Bankr. M.D. Fla. 2002).

Analysis

The Court first notes the lack of any evidence regarding the Defendant, Khalida Denha. She was not offered as a witness by either the Plaintiff or the Defendants and references to her participation in this Chapter 7 are fleeting, at best. There is no evidence that Khalida Denha knew of the New York Life Policy, the Food Value Lease, or any Promissory Note. As near as can be inferred from the evidence offered by all parties, Khalida Denha was not active in any business dealings of her husband, Mr. Denha, and has only an elementary knowledge of their financial condition. The Court, therefore, concludes that there is no evidence supporting a finding that Khalida Denha had the requisite intent as required by 11 U.S.C. § 727, and that the Plaintiff's claims against her must, therefore, be dismissed. Likewise, there is no evidence offered by the Plaintiff that Khalida Denha knew of the New York Life Policy, the Food Value Lease, or the Promissory Note and that she, therefore, could not have made a false statement about something that she knew nothing about. Instead, all of the evidence leads the Court to conclude that Mr. Denha was the only individual who had the necessary knowledge and information to complete the Schedules and Statement of Financial Affairs and address the issues raised by the Trustee.

After closely reviewing the admitted exhibits and the testimony of the Defendant Mr. Denha, Mr. Salib, and Robert Denha, the Court concludes that Mr. Denha did not have the requisite intent as required by 11 U.S.C. § 727 to warrant the denial of a discharge to him. The Plaintiff points to

many facts, statements, and inconsistent actions that could lead the Court to the conclusion that Mr. Denha did have the requisite intent to deny him a discharge. Taken in the sterile environment of merely reviewing documents, the Court could conclude that Mr. Denha either intentionally withheld information or concealed information regarding the New York Life Policy, the Food Value Lease, and the Promissory Note. The consideration of Mr. Denha's live testimony, coupled with the placement of the events in the time sequence in which they occurred, however, leads the Court to a different conclusion.

In particular, the Court was impressed with Mr. Denha's credibility while testifying. While testifying in Court, Mr. Denha struggled with certain basic concepts that many individuals could easily grasp. In reaching this conclusion, the Court does not mean to denigrate Mr. Denha's intelligence, knowledge, or experience, but instead notes that it is clear that Mr. Denha has a very limited knowledge of certain economic and legal concepts. While Mr. Denha may have been a very successful grocer, those skills did not transfer well into the legal and financial area that the bankruptcy world must address.

Second, the Court is convinced that Mr. Denha advised Mr. Nahabedian of the lack of need for the Chapter 7 and then relied upon Mr. Nahabedian's advice, albeit wrong, that he need not do anything more. Instead, the Court concludes that Mr. Denha, an immigrant with limited financial and legal background, sought information from others that he thought was complete, but in fact was not. Further, Mr. Denha, once he realized that he no longer needed the protection of Chapter 7, contacted his attorney and was told to take no further action.

## Conclusion

The Court concludes that the Plaintiff has not sustained his burden of proof to convince the Court that either Defendant had the requisite intent under 11 U.S.C. § 727 that would support the denial of their discharge. Likewise, the Court concludes that the Plaintiff has failed to prove that the Defendants had the necessary knowledge such that any oath made by them in their Schedules,

Statement of Financial Affairs, or otherwise was false such that their discharge should be denied.

For these reasons, the Court dismisses the Plaintiff's Complaint and directs that the Clerk of the Court may enter a discharge for the Defendants, Tony Denha and Khalida Denha.

Counsel for the Defendants is directed to prepare an order consistent with this Opinion.

Not for publication

**Signed on February 25, 2013**

                                           **/s/ Daniel S. Opperman**
                                       **Daniel S. Opperman**
                                       **United States Bankruptcy Judge**